1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16

JOHN DOE,

    Petitioner,

 v.

CHRISTOPHER CHESTNUT, *et al.*,

    Respondents.

Case No. 1:25-cv-01372-CDB (HC)

ORDER GRANTING IN PART PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION

(Doc. 9)

**<u>10-Day Deadline</u>**

17
18
19
20
21
22
23
24
25
26

   Pending before the Court[1] is Petitioner John Doe's motion for preliminary injunction, filed on November 3, 2025.  (Doc. 9).  On November 10, 2025, Respondents Christopher Chestnut, in his official capacity as Warden of the California City Detention Center, Sergio Albarran, in his official capacity as Field Officer Director of the Immigration and Customs Enforcement ("ICE"), San Francisco, Todd M. Lyons, in his official capacity as Acting Director of ICE, Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, and Pamela Bondi, in her official capacity as Attorney General of the United States (collectively, "Respondents") filed an opposition, and on November 14, 2025, Petitioner replied.  (Docs. 15, 17).  Because Petitioner does not request a hearing (Doc. 9 at 2), the Court deemed the motion submitted for decision without oral argument.  (Doc. 12) (citing Local Rule 230(g)).

27
28

---

  [1]  Both parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 11).

1  I.    **Relevant Background**

2        A.    **Procedural History**

3        Petitioner John Doe, a federal prisoner proceeding by counsel, initiated this action by filing

4  a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion to proceed under

5  pseudonym on October 15, 2025, while in custody of ICE at the California City Detention Facility,

6  located in Kern County, California, which is where he is currently detained.  (Docs. 1, 2).  On

7  October 16, 2025, the Court preliminarily concluded that Petitioner's petition may be cognizable

8  under § 2241 and ordered Respondents to file a response addressing the merits or seeking dismissal

9  of the petition within 45 days from the date of service of the order – specifically, no later than

10 December 1, 2025.  (Doc. 4).  After Petitioner filed a first amended petition for writ of habeas

11 corpus (Doc. 8) and the instant motion for preliminary injunction (Doc. 9), on November 5, 2025,

12 the Court found the claims asserted potentially cognizable and set a briefing schedule on the motion.

13 (Doc. 12).  On November 10, 2025, the Court granted Petitioner's request to proceed under

14 pseudonym as "John Doe."  (Doc. 14).

15       On November 24, 2025, Petitioner filed a notice of delay in immigration court proceedings,

16 representing that his fourth individual calendar hearing ("ICH") scheduled for November 21, 2025,

17 was reset for February 12, 2026, as the immigration judge informed Petitioner's counsel that the

18 agency was unable to obtain an interpreter.  (Doc. 19 at 2); (Doc. 19-1, Notice of Hearing in

19 Removal Proceedings).

20       B.    **Factual Background**[2]

21       Petitioner, an indigenous Popti' man from Guatemala, fled Guatemala in August 2020 when

22 he was nineteen years of age after he was violently attacked and sexually assaulted by a large group

23 of nonindigenous men.  (Doc. 8 ¶¶ 1, 19, 20).  Petitioner entered the United States without

24 inspection on September 10, 2020, and was detained and processed for expedited removal under 8

25 U.S.C. § 1225(b).  *Id.* ¶ 21.  On October 15, 2020, he failed a credible fear interview with an asylum

26

27          [2] The factual background is drawn from Petitioner's first amended verified petition for writ of habeas corpus and other evidence in the record.  (Doc. 8).  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque,* 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

28

1    officer.  *Id.*  On December 29, 2020, a different immigration judge held a bond hearing and denied

2    Petitioner bond on the basis that he was a flight risk.  *Id.* ¶ 22.  On January 19, 2021, the same

3    immigration judge issued a removal order.  Petitioner, on the advice of his counsel at the bond

4    hearing, had not filed an asylum application or any other applications for relief from removal.  *Id.*

5    ¶ 23.  On March 19, 2021, ICE released Petitioner from custody on an Order of Supervision, with

6    internal ICE documents showing the decision to release him was based on the applicable regulatory

7    criteria, including determination that he was neither a flight risk nor a danger to the public.  *Id.* ¶¶

8    2, 24; *see* (Doc. 9-2, Declaration of David Benham-Suk ["Benham-Suk Decl."] ¶ 4 & Exhibit

9    ["Ex."] F).  Removal capacity was limited during the ongoing COVID-19 pandemic and an ICE

10   deputy field office director explained to Petitioner that he did not meet enumerated enforcement

11   priorities of national security, border security, and public safety.  (Doc. 8 ¶ 24).

12        When he was released, and for the following three and a half years, Petitioner resided in

13   Pleasanton, California, with his younger brother.  *Id.* ¶¶ 2, 25.  In February 2022, he retained his

14   current counsel.  *Id.* ¶ 25.  He wore an ankle monitor until ICE removed it in late 2023, and between

15   January and October 2024, he attended at least ten check-ins at ICE's San Francisco office.  *Id.*  In

16   April 2024, Petitioner filed an application for asylum with United States Citizenship and

17   Immigration Services ("USCIS") that was denied for lack of jurisdiction due to his immigration

18   court removal proceedings and outstanding order of removal.  *Id.* ¶ 26.  In September 2024, he filed

19   a Form I-918 Petition[3] for U non-immigrant status, known as "U-Visa," which remains pending.

20   *Id.* ¶ 27.  In May and September 2024, Petitioner filed Form I-246 applications for stays of removal

21   based on his applications for asylum and a U-Visa.  The first stay of removal application was

22   granted and the second was denied.  *Id.* ¶ 28.  On October 21, 2024, Petitioner attended a scheduled

23   ICE check-in in San Francisco, and the next day, he received a telephone call asking him to return

24   to the ICE office to answer a few additional questions.  On October 23, 2024, ICE re-detained

25   Petitioner and he remains in immigration detention.  *Id.* ¶ 29.

26   ───────────────

27        [3] Petitioner alleges his U-Visa petition is based on the crime of extortion as he received a
     series of indecent text messages falsely identifying him as a child molester, containing photographs
28   of his daughter, and demanding a payment of $1,000.  (Doc. 8 ¶ 27).  He alleges that he reported
     the crime to the police in Pleasanton, California.  *Id.*

On October 25, 2024, Petitioner filed a motion to reopen his immigration court removal proceedings that had resulted in the January 2021 removal order against him. *Id.* ¶ 30. After an immigration judge initially denied his motion in November 2024, on March 20, 2025, the motion was granted after Petitioner appealed the motion's denial and the Board of Immigration Appeals ("BIA") remanded. *Id.* ¶ 31. At the time of reopening, Petitioner had been detained for nearly five months under 8 U.S.C. § 1231(a)(6), and since reopening, he has remained detained for more than six additional months under 8 U.S.C. § 1225(b) in connection with his pending 8 U.S.C. § 1229a removal proceedings. *Id.*

In March 2025, Petitioner requested a bond hearing. On May 19, 2025, the immigration judge issued an order stating that Petitioner had withdrawn his bond request. *Id.* ¶ 32. On May 27, 2025, Petitioner submitted a request for discretionary release on parole under 8 U.S.C. § 1182(d)(5). Despite his subsequent inquiry, Petitioner's counsel has never received a decision regarding the parole request. *Id.* ¶ 33.

Petitioner has had three ICHs in his reopened immigration court removal proceedings, including his first ICH on August 20, 2025, where the immigration judge informed the parties that she could not proceed because she had been unable to obtain an interpreter in Petitioner's native language, Mayan Popti'. *Id.* ¶ 34. At his second ICH on September 17, 2025, a Popti' interpreter was present, but because she did not speak English, relay interpretation from English to Spanish to Popti' was necessary. After three and a half hours, the immigration judge continued the proceedings due to time constraints even though Petitioner had not completed his testimony. After the second ICH, Petitioner filed a motion to change interpreters based on incomplete and inaccurate interpretation, and the motion was granted. *Id.* ¶ 35. At a third ICH on September 24, 2025, Petitioner could not resume his testimony because no alternate Popti' interpreter was available. *Id.* ¶ 36. Petitioner's fourth ICH was scheduled for November 21, 2025 (*id.* ¶ 36), but was delayed due to the unavailability of an interpreter (*see* Doc. 19). Petitioner has yet to finish his testimony as a witness and indicates there are six additional witnesses who will need interpretation in Popti.' Petitioner alleges that once the immigration judge issues a order in the removal proceedings, either party may appeal to the BIA, leading to additional time in detention. (Doc. 8 ¶ 37).

1      After he was re-arrested on October 23, 2024, Petitioner was transferred to Golden State

2  Annex in McFarland, California, before he was transferred in September 2025 to California City

3  Detention Facility, where he remains detained.  *Id.* ¶ 38.  Petitioner the conditions at his current

4  detention in California City Detention Facility are particularly harsh as he has been confined to his

5  cell for two stretches of four and five days except for brief daily trips to shower and he has had no

6  access to medical treatment or telephone calls, including legal calls.  *Id.* ¶¶ 4, 40.  Petitioner reports

7  extreme difficulty in sleeping due to bright lights and very cold temperatures and has not seen

8  daylight even once for approximately a month.  *Id.*  Petitioner indicates he has found worms in

9  food, remains without consistent access to a diet that does not exacerbate his gastritis, that he is

10  often hungry, and is losing weight.  *Id.*

11  **II.      Governing Authority**[4]

12      "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v.*

13  *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90

14  (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

15  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

16  balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v.*

17  *Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter*, 555 U.S. at 20); *Weinberger v. Romero-Barcelo*,

18  456 U.S. 305, 311–12 (1982)).  "Under *Winter*, plaintiffs must establish that irreparable harm is

19  likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies*

20  *v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Likelihood of success on the merits is a threshold

21  inquiry and is the most important factor."  *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784,

22  797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

23  "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing

24  than likelihood of success on the merits—then a preliminary injunction may still issue if the balance

25  —————————————

26      [4] As the Court found in its preliminary screening order, the Court has jurisdiction over
Petitioner's claim that he improperly is detained without a bond hearing, pursuant to 28 U.S.C. §
2241.  (Doc. 4 at 1-2).  In opposing issuance of a preliminary injunction, Respondents do not
27  challenge the Court's jurisdiction over this claim; however, Respondents do assert that
Petitioner's claim based on his physical conditions of confinement is not cognizable in a habeas
28  corpus proceeding.  *See* (Doc. 15 at 9).

of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

Preliminary injunctions are intended "merely to preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward." *Lackey v Stinnie*, 604 U.S. ___, 145 S. Ct. 659, 667 (2025) (citations and quotations omitted). "The status quo refers to 'the last uncontested status which preceded the pending controversy.'" *E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185, at *8 (E.D. Cal. Nov. 25, 2025) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963)).

## III.    <u>Parties' Contentions</u>

Petitioner seeks issuance of a writ of habeas corpus ordering his immediate release from custody, or, in the alternative, for release from custody unless the government holds a bond hearing before a neutral immigration judge in which, to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a current risk of flight or danger.  (Doc. 8 ¶ 6).  Petitioner contends that he is likely to succeed on the merits of his claims on both substantive due process and procedural due process grounds.  (Doc. 9-1 at 16).  In support of his claims of substantive due process violations, he contends that his continued detention is untethered to any proper purposes for civil immigration detention and that his detention is punitive. *Id.* at 17-22.  He separately argues that procedural due process entitles him to release unless he is promptly provided with a constitutionally compliant bond hearing because his detention has become prolonged, and under the three-factor test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) ("*Mathews*"), he is entitled to a bond hearing. *Id.* at 22.  Petitioner argues the other *Winter* factors favor issuance of a preliminary injunction as he will continue to suffer serious and irreparable harm based on his continued unlawful detention and the balance of the equities and public interest strongly favor grant of a preliminary injunction. *Id.* at 23-24.  Petitioner also argues that the Court should not require a bond. *Id.* at 24.

Respondents contend that the Court should deny Petitioner's motion for a preliminary injunction because he improperly seeks a determination on the merits, he is unlikely to succeed on

1   the merits, he has not met his burden to show likely irreparable harm, and the balance of the equities

2   and the public interest weigh against his requested relief.  (Doc. 15 at 4-10).  Respondents argue

3   that Petitioner's due process challenge fails because the government violated no statutory rights in

4   following the plain language of § 1225(b), and even assuming he has a protected liberty interest,

5   under *Mathews*, Petitioner is not entitled to relief.  *Id.* at 6-9.  Respondents argue that to the extent

6   Petitioner relies on conditions of confinement as a basis for habeas relief, his petition fails.  *Id.* at

7   9.[5]

8        Petitioner argues in reply that Respondents ignore Petitioner's first basis for his substantive

9   due process claim that his detention lacks a connection to the purposes of civil immigration

10  detention and improperly construe the second basis for that claim as a challenge to the conditions

11  of confinement.  (Doc. 17 at 4).

12  **IV.    Discussion**

13       **A.    Exhaustion**

14       "Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before

15  filing petitions for habeas corpus.'"  *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing

16  *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires

17  that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative

18  remedies before seeking relief under § 2241."  *Castro-Cortez*, 239 F.3d at 1047 (citing *United

19  States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is

20  entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been

21  exhausted.'"  *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).

22  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it

23  may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."

24

25       [5] In their opposition, Respondents argue the Court should dismiss "all respondents other
    than the warden of the California City Detention Facility because the only proper respondent to a
26  habeas petition is the custodian having immediate custody of the petitioner." (Doc. No. 15 at 1
    n.1).  The Court acknowledges that the proper respondent in a "core" habeas petition challenging
27  present physical confinement is the immediate custodian.  *Doe v. Garland*, 109 F.4th 1188, 1197
    (9th Cir. 2024).  Petitioner has properly named the immediate custodian, the warden of the
28  California City Detention Center.  If Respondents seek to dismiss the other Respondents from this
    action, they must do so in a properly noticed motion.

1    *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d

2    742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although

3    courts have discretion to waive the exhaustion requirement when it is prudentially required, this

4    discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion

5    requirement has been satisfied or properly waived."  *Id.* (internal citations omitted); *see Murillo v.*

6    *Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring

7    exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly

8    to be disregarded.").

9        Petitioner contends that exhaustion should be waived because it would be futile for him to

10    seek release by administrative means and because "his continued unconstitutional detention causes

11    him irreparable harm" by prolonging his unjustified detention.  (Doc. 8 ¶¶ 9, 11); (Doc. 9-1 at 13).

12    He asserts that a request for a bond hearing would be futile as noncitizens detained under 8 U.S.C.

13    § 1225(b), as is Petitioner, are subject to indefinite mandatory detention with no statutory right to

14    a bond hearing even if they pass their credible fear process and are placed into full removal

15    proceedings under 8 U.S.C. § 1229a.  (Doc. 8 ¶ 10).  Respondents do not object to Petitioner's

16    contention that exhaustion is prudential and should be waived as futile.  *See* (Doc. 15).

17        Here, Petitioner shows that the prudential exhaustion requirement should be waived as it

18    would be futile for him to seek release by administrative means.  Specifically, because the parties

19    do not dispute that Petitioner is subject to indefinite mandatory detention under 8 U.S.C. § 1225(b),

20    *see* (Doc. 8 ¶ 10); (Doc. 15 at 1); (Doc. 17 at 11), under that framework, Petitioner has no statutory

21    right to a bond hearing during his course of detention and therefore lacks recourse through statutory

22    or administrative means.  *See Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) …

23    do[e]s not give detained aliens the right to periodic bond hearings during the course of their

24    detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Thus, and because

25    Respondents do not object to and do not otherwise address Petitioner's arguments that exhaustion

26    should be waived for futility and on grounds that continued detention causes him irreparable harm,

27    the Court will waive the prudential exhaustion requirement for Petitioner's claim for habeas corpus

28    relief.  *See Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) ("[A] court may waive the

1  prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious,

2  pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the

3  administrative proceedings would be void.'") (citing *Laing*, 370 F.3d at 1000); *e.g.*, *Chavez v.*

4  *Noem*, -- F. Supp. 3d. --, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) ("The Court therefore

5  finds the prudential exhaustion requirements waived for futility.  Because Petitioners need to show

6  only one of the Laing factors applies, … the Court need not address the other factors.")  (internal

7  citation omitted); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1254-55 (W.D. Wash. April 24,

8  2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to

9  immigration detention.'") (citing *Hernandez*, 872 F.3d at 995); *Carmelo Beltran v. Kristi Noem*,

10  No. 25cv2650-LL-DEB, 2025 WL 3078837, at *4 (S.D. Cal. Nov. 4, 2025); *J.A.C.P. v. Wofford*,

11  No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7, n.9 (E.D. Cal. Oct. 27, 2025);

12  *Kuzmenko v. Phillips*, No. 25-cv-00663-DJC-AC, 2025 WL 779743, at *4 (E.D. Cal. Mar. 10,

13  2025)).

14  **B.    Likelihood on the Success of the Merits**

15  1.    *Substantive Due Process*

16  a.    <u>Governing Authority</u>

17  "The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be

18  deprived of life, liberty, or property, without due process of law.'"  *United States v. Quintero*, 995

19  F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V).  "The Due Process Clause 'protects

20  individuals against two types of government action': violations of substantive due process and

21  procedural due process."  *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

22  "[S]ubstantive due process prevents the government from engaging in conduct that shocks the

23  conscience, or interferes with rights implicit in the concept of ordered liberty."  *Salerno*, 481 U.S.

24  at 746 (citations omitted).

25  In the criminal context, the Ninth Circuit has held that "[a] due process violation occurs

26  when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose

27  that can rationally be assigned to the detention or the detention appears excessive in relation to its

28  regulatory purpose."  *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*,

1     481 U.S. at 747). "[W]hile the existence of some threshold of per se due process violation may be

2     'undisputed,' it has also never been clearly delineated in the context of immigration detention."

3     *Doe v. Beccera*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (internal citation omitted), *abrogated*

4     *on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

5                                            b.    Analysis

6                Petitioner's argument—that his continued detention violates substantive due process

7     because the detention is untethered to any legitimate regulatory purpose for civil immigration

8     detention and the detention is punitive (Doc. 9-1 at 14)—is not directly supported by binding

9     authority extending to immigration detainees under the same circumstances as Petitioner the right

10    to which he claims entitlement.  As noted above, Petitioner does not dispute that he is subject to

11    mandatory detention pursuant to the 28 U.S.C. § 1225(b) statutory framework.  The Supreme Court

12    made clear in *Jennings* that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the

13    completion of applicable proceedings and not just until the moment those proceedings begin."

14    *Jennings*, 582 U.S. at 303; *see id.* at 300 ("[§§ 1225(b)(1) and (b)(2)] unequivocally mandate that

15    aliens falling within their scope 'shall' be detained.") (quoting *Kingdomware Technologies, Inc. v.*

16    *United States*, 579 U.S. 162, 171 (2016)).

17                In *Department of Homeland Security v. Thuraissigiam*, the Supreme Court explained that

18    "[a]n alien present in the United States who has not been admitted … is deemed 'an applicant for

19    admission.'"  591 U.S. 103, 109 (2020) (quoting 28 U.S.C. § 1225(a)(1)).  "An applicant is subject

20    to expedited removal if, as relevant here, the applicant … is among those whom the Secretary of

21    Homeland Security has designated for expedited removal."  *Id.* (citing §§ 1225(b)(1)(A)(i), (iii)(I)-

22    (II)).  The Court in *Thuraissigiam* observed that the "century old rule regarding the due process

23    rights of an alien seeking initial entry . … rests on fundamental propositions: '[T]he power to admit

24    or exclude aliens is a sovereign prerogative'[;] … the Constitution gives 'the political department

25    of the government' plenary authority to decide which aliens to admit[;] … and a concomitant of

26    that power is the power to set the procedures to be followed in determining whether an alien should

27    be admitted[.]"  *Id.* at 139 (internal citations omitted).  "[A]liens who arrive at ports of entry—even

28    those paroled elsewhere in the country for years pending removal—are 'treated' for due process

                                            10

1   purposes 'as if stopped at the border.'" *Id.* (citation omitted); *see id.* at 140 ("[A]n alien who is

2   detained shortly after unlawful entry cannot be said to have 'effected an entry, *Zadvydas v. Davis*,

3   533 U.S. 678, 693 (2001).").

4        Here, Petitioner entered the United States without inspection on September 10, 2020, and

5   was detained by DHS and processed for expedited removal under § 1225(b).  (Doc. 8 ¶ 21).

6   Therefore, "an alien in [Petitioner's] position has only those rights regarding admission that

7   Congress has provided by statute. … Congress provided the right to a 'determin[ation]' whether he

8   had 'a significant possibility' of establish[ing] eligibility for asylum,' and he was given that right.

9   Because the Due Process Clause provides nothing more, it does not require a review of that

10   determination or how it was made." *Thuraissigiam*, 591 U.S. at 140 (citing §§ 1225(b)(1)(B)(ii),

11   (v)).  Thus, considering the above statutory framework as to Petitioner's admissibility and re-

12   detention attendant upon his pending removal proceedings, Petitioner fails to show that the

13   government lacks any constitutionally valid purpose to detain him, and otherwise fails to establish

14   he has the requisite liberty interest to advance a claim for violation of his substantive due process

15   rights.

16        Even assuming Petitioner has a right to substantive due process, considering Petitioner's

17   period of detention from the time he successfully relitigated his motion to reopen removal

18   proceedings on March 20, 2025, to present day—which the Court considers the operative period of

19   detention at issue here[6]—the Court does not find this eight-month period of detention punitive or

20   detached from § 1225(b)'s regulatory purpose of mandatory detention pending the completion of

21   removal proceedings.  As *Jennings* instructs, §§ 1225(b)(1) and (b)(2) require that "detention must

22   continue until immigration officers have finished 'consider[ing]' the application for asylum [under

23   § 1225(b)(1)], or until removal proceedings have concluded[ under § 1225(b)(2)]." *Jennings*, 583

24   U.S. at 299.  *Jennings* further held that "neither provision can reasonably be read to limit detention

25   to six months." *Id.* at 301.  The Court acknowledges that Petitioner's immigration proceedings

26   have encountered complications based on issues with finding him a competent interpreter in his

27

28       [6] Following the reopening of Petitioner's removal proceedings on March 20, 2025, Petitioner moved for a bond redetermination but later withdrew that request.  (Doc. 8 ¶ 32).

native language.  However, because the record shows that the immigration proceedings have progressed with a series of individual calendar hearings ("ICH") with a fifth ICH set for February 12, 2026, Petitioner's detention appears consistent with the regulatory purposes of § 1225(b) such that the duration of his detention does not appear excessive and cannot be deemed punitive in violation of substantive due process.  *See* (Doc. 19).  *Cf. Rodriguez Diaz*, 53 F.4th at 1218 (Bumatay, concurring) (noting under Supreme Court precedent that removal proceedings do not violate due process so long as they are not unreasonably delayed and the detention is tethered to an immigration purpose).

Petitioner largely relies on two decisions from the Northern District of California in *Doe v. Beccera* (732 F. Supp. 3d 1071 (N.D. Cal. 2024); 723 F. Supp. 3d 688 (N.D. Cal. 2024)) and courts that have applied the framework adopted therein to show that his continued detention violates substantive due process.  In *Becerra*, the district court applied a five-factor test drawn from Ninth Circuit cases "regarding detention before criminal trial and civil commitment proceedings [to determine] whether continued detention under Section 1226(c) violates substantive due process[.]" *Doe*, 632 F. Supp. 3d at 1080 (citing *Doe*, 723 F. Supp. 3d at 692).  Through the Ninth Circuit vacated the *Becerra* court's most recent opinion for lack of jurisdiction (*see Doe v. Garland*, 109 F. 4th 1188, 1198 (9th Cir. 2024)), the undersigned acknowledges the persuasive value of the five-factor test.  Nevertheless, the undersigned declines to apply the *Becerra* test here for a variety of reasons.

First, the *Becerra* multi-factor test derives from authorities outside the context of immigration detention (including criminal cases) and appears inconsistent with the Ninth Circuit's recent observation that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," including § 1225(b).  *Rodriguez Diaz*, 53 F.4th at 1201 (emphasis in original).  Second, there are material distinctions between Petitioner's circumstances and the facts at issue in *Becerra*, including that the petitioner there was detained pursuant to § 1226(c) (not, as is Petitioner here, § 1225(b)).  *E.g., Leon Alcazar v. Cantu*, No. CV-24-03342-PHX-JAT (DMF), 2025 WL 2548698, at *13-14 (D. Az. June 5, 2025), *R&R adopted*, 2025 WL

1    2304357 (Aug. 11, 2025). Here, also, Petitioner was afforded a bond hearing by an immigration

2    judge initially, detained as a flight risk, and ordered removed (although, admittedly, these

3    proceedings occurred several years ago, Petitioner ultimately was released and supervised

4    successfully by immigration authorities, and he more recently successfully petitioned to reopen his

5    removal proceedings, discussed *infra*.).

6        Accordingly, the Court does not find that Petitioner is likely to succeed on the merits of his

7    claims of substantive due process violations.

8                    2.    *Procedural Due Process*

9                        a.    Governing Authority

10       "Procedural due process imposes constraints on governmental decisions which deprive

11   individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

12   Fifth … Amendment." *Mathews*, 424 U.S. at 333. "[F]reedom from imprisonment—from

13   government custody, detention, or other forms of physical restraint—lies at the heart of the liberty

14   that Clause protects." *Zadvydas*, 533 U.S. at 690. "Procedural due process requires that, even

15   where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented

16   in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right

17   to be heard before being condemned to suffer grievous loss of any kind, even though it may not

18   involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'"

19   *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the

20   opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong*

21   *v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural

22   protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

23       "[T]he Due Process Clause applies to all 'persons' within the United States, including

24   aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533

25   U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the

26   Due Process Clause stands as a significant constraint on the manner in which the political branches

27   may exercise their plenary authority."). "In the context of immigration detention, it is well-settled

28   that 'due process requires adequate procedural protections to ensure that the government's asserted

1    justification for physical confinement outweighs the individual's constitutionally protected interest

2    in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d

3    1196, 1203 (9th Cir. 2011)).

4                    b.       Liberty Interest and *Mathews* Factor Test

5           Though Petitioner fails to show he has substantive due process rights based on challenges

6    to his admissibility or to the validity of his ongoing removal proceedings and re-detention attendant

7    thereto under § 1225(b)'s mandatory detention statutory framework, he is not foreclosed from his

8    procedural "due process claims which seek to vindicate a right to a bond hearing with certain

9    procedural protections." *Padilla v. U.S. Immigration and Customs Enforcement*, 704 F. Supp. 3d

10   1163, 1172 (W.D. Wash. 2023); *see Quintero*, 995 F.3d at 1051-52 ("Procedural due process

11   requires that, even where a deprivation of liberty survives substantive due process scrutiny, the

12   action 'be implemented in a fair manner.'") (citation omitted).

13          Here, Petitioner shows that, under procedural due process, he has an underlying, continuing

14   liberty interest from re-detention.  Specifically, after Petitioner was determined to be a flight risk

15   on December 29, 2020, and subject to removal on January 19, 2021, the government released him

16   from immigration detention on March 19, 2021, for what appears to be the government's own

17   convenience in light of limited removal capacity during the COVID-19 pandemic.  (Doc. 8 ¶¶ 22-

18   24); (Benham-Suk Decl., Ex. E,  Jan. 19, 2021, removal order; *id.*, Ex. G, Mar. 18, 2021, Informal

19   File Review/SLRFF).  The decision to release Petitioner appears to be a tacit acceptance that

20   Petitioner was no longer a flight risk nor a danger to the community.  *See* Ex. G at 34 ("Non-citizen

21   [Petitioner] does not meet interim presumed priorities."), at 35 ("Subject does not meet an

22   enumerated CIEP.  Release from custody on ATD.").   Petitioner remained released from

23   immigration detention for a significant amount of time—over three and a half years—and

24   Respondents do not challenge the assertion that he has complied with all conditions of his

25   supervised release.  (Doc. 8 ¶ 25); (Benham-Suk Decl., Ex. I, Order of Supervision with check-in

26   dates from Jan. 3, 2024, to Oct. 21, 2024); *see* (Doc. 15).

27          The undersigned agrees with other courts and other judges of this Court that noncitizens

28   released from immigration custody on general orders of supervision (like Petitioner here) have a

                                                14

1    liberty interest in their freedom that implicates protections under principles of procedural due

2    process. *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact

3    that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a

4    protectable liberty interest and can be re-detained without process."); *see id.* ("[E]ven if

5    immigration detainees must wait months before a periodic re-review of their detention, those

6    already released on immigration bond possess an interest in their continued liberty, which grows

7    over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v.*

8    *Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020). Accord *Doe v. Becerra*, 787 F. Supp. 3d

9    1083, 1099 (E.D. Cal. 2025) (considering in connection with a petitioner's procedural due process

10   claim that "[t]he lengthy duration of his conditional release as well as the meaningful connections

11   Petitioner seems to have made with his community during that time create a powerful interest for

12   Petitioner in his continued liberty"); *Ramazan M. v. Tonya Andrews*, No. 1:25-cv-01356-KES-SKO

13   (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the

14   government to arrest and detain an individual, a protected liberty interest under the Due Process

15   Clause may entitle the individual to procedural protections not found in the statute").

16        Because Petitioner has shown he has a protected liberty interest to remain free from re-

17   detention based on his release, the Court must determine what process is due before the government

18   may terminate that liberty interest. Here, the parties agree that the three-factor test articulated in

19   *Mathews* applies in consideration of Petitioner's claims implicating procedural due process. (Doc.

20   9-1 at 21); (Doc. 15 at 7).

21        *Mathews* "requires consideration of three distinct factors: [(1)] the private interest that will

22   be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through

23   the procedures used, and the probable value, if any, of additional or substitute procedural

24   safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and

25   administrative burdens that the additional or substitute procedural requirement would entail."

26   *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in

27   immigration detention context), at 993 ("The appropriateness of the requirement that ICE and IJs

28

1  consider financial circumstances and alternative conditions of release is confirmed by the balance

2  of factors under *Mathews*[.]").

3      As to the first factor, Petitioner has shown he has a significant private interest in remaining

4  on release from detention.  He has been out of immigration custody for over three and a half years,

5  and during that time, has lived in Pleasanton, California, where he has supported his younger

6  brother financially, was not arrested nor convicted of any crime, and has complied with all

7  obligations with his release, including wearing an ankle monitor until late-2023 and attending at

8  least ten check-ins with ICE.  *See* Benham-Suk Decl., Ex. I.  Petitioner's continued liberty interest

9  in remaining on release is undermined by his re-detention without a bond hearing.  *Doe*, 787 F.

10 Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause….

11 The lengthy duration of his conditional release [for over five years] as well as the meaningful

12 connections [he] seems to have made with his community during that time create a powerful interest

13 for [him] in his continued liberty.").

14     As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest

15 is considerable here where he has not received any bond or custody redetermination.  *Id.* at 1094;

16 *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)

17 ("'the risk of an erroneous deprivation of [petitioner's liberty] interest is high' where '[h]e has not

18 received any bond or custody redetermination hearing.'") (citation omitted).  Because there were

19 no procedural safeguards to determine if Petitioner's re-detention was justified, and Respondents

20 have not articulated any change in circumstances while Petitioner was on release sufficient to justify

21 Petitioner's re-detention, the probable value of the additional procedural safeguard of a bond

22 hearing to determine whether Petitioner is a flight risk or a danger to the community is high such

23 that this factor weighs in favor of granting a bond hearing.  *See Doe*, 787 F. Supp. at 1094 ("[G]iven

24 that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions

25 about the timing and reliability of the new information, the risk of erroneous deprivation remains

26 high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6.  Therefore, this factor

27 weighs in favor of granting a bond hearing.

28

1    Third, although the government contends it maintains a "weighty" interest in enforcing

2    immigration laws and preventing deportable non-citizens from fleeing, (Doc. 15 at 8-9), the

3    government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d

4    at 1094 (citation omitted); *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019))

5    ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low. The

6    allegedly material change of circumstances—the Order of Removal—occurred over a year and a

7    half ago, and during all that time, Ortega has strictly complied with all the requirements of his

8    release. If the government wishes to re-arrest Ortega at any point, it has the power to take steps

9    toward doing so; but its interest in doing so without a hearing is low. Accordingly, the *Mathews*

10   factors favor Ortega."); accord, *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D.

11   Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the

12   government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of

13   the fact that Petitioner[] has long complied with his reporting requirements."). "The effort and cost

14   to provide Petitioner with [a bond hearing] is minimal[.]" *Doe*, 787 F. Supp. 3d at 1094. Therefore,

15   any additional burden from requiring the government to seek a bond hearing before it may re-detain

16   Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly,

17   this factor weighs in favor of granting a bond hearing.

18       In sum, the Court finds that, under *Mathews*, Petitioner demonstrates a likelihood of success

19   on the merits of his claims asserting violations of his procedural due process rights.

20       **C.    Irreparable Harm**

21       The Court now turns to the second *Winter* factor. "It is well established that the deprivation

22   of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994

23   (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation

24   of a constitutional right is involved, most courts hold that no further showing of irreparable injury

25   is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright,

26   Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

27       Petitioner contends that absent a preliminary injunction, he will continue to suffer serious

28   and irreparable injury each day he remains in detention in violation of his Fifth Amendment rights.

(Doc. 9-1 at 23).  The Court agrees.  As noted above, Petitioner shows that he is likely to succeed on the merits of his claim that his re-detention without a bond hearing violates procedural due process.  *See Ramazan*, 2025 WL 3145562, at *8 (citing *Hernandez*, 872 F.3d at 994-95).  Therefore, Petitioner faces irreparable harm absent a preliminary injunction.  This *Winter* factor weighs in favor of preliminary injunctive relief.

### D.    Balance of Equities and Public Interest

"When … the nonmovant is the government, the last two *Winter* factors 'merge.'"  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020) (per curiam)).

Here, Respondents contend the balance of the equities and public interest do not tip toward Petitioner because the government has a "weighty" interest in the efficient administration of the immigration laws and a "strong and compelling" interest in protecting the public and preventing deportable non-citizens from fleeing.  (Doc. 15 at 10).  Respondents' arguments are unconvincing.  Respondents fail to show that any harm they face here is more than minimal, and do not otherwise identify any material burden they would experience from issuance of the requested injunction.  Therefore, the Court has "'little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor.'"  *See Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Additionally, the Court finds that the public interest also weighs in Petitioner's favor.  "It is always in the public interest to prevent the violation of a party's constitutional rights."  *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (citation omitted); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.") (citations omitted). "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)).

1    Therefore, these *Winter* factors weigh in favor of granting preliminary injunctive relief.

2    **E.    Burden of Proof**

3    Petitioner argues that Respondents must bear the burden to show he presents a flight risk or

4    a danger to the community by clear and convincing evidence to justify his re-detention.  (Doc. 9-1

5    at 22).  Respondents make no argument as to the burden of proof.  *See* (Doc. 15).

6    Following Ninth Circuit precedent and other judges of this Court, the undersigned finds that

7    the burden of demonstrating Petitioner's risk of flight and danger is appropriately placed on the

8    government.  *See Singh*, 638 F.3d at 1203 ("the government must prove by clear and convincing

9    evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a []

10    hearing."); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("the constitutionally

11    grounded hearing requirements set forth in *Singh* are also applicable [to § 1225(b) detainees.]");

12    *e.g.*, *Ramazan*, 2025 WL 3145562, at *8; *Abdul-Samed v. Warden of Golden State Annex Detention

13    Facility*, No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *9 (E.D. Cal. July 25, 2025) ("'[T]he

14    government must prove by clear and convincing evidence that an alien is a flight risk or a danger

15    to the community to justify denial of bond' and that the bond hearing must comport with the other

16    requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).").

17    **F.    Remedy**

18    Based on the foregoing, the Court finds that Petitioner has met the requirements to issue a

19    preliminary injunction.  Petitioner's entitlement to a bond hearing to determine whether he may be

20    subject to continued re-detention pending the completion of his removal proceedings is required to

21    return him to the status quo.  *E.A.P.C.*, 2025 WL 3289185, at *8 (citing *Tanner Motor Livery*, 316

22    F.2d at 809); *Kuzmenko*, 2025 WL 779743, at *3.

23    Respondents are ordered to release Petitioner by the deadline set forth below unless

24    Respondents schedule a bond hearing to take place before a neutral immigration judge where, to

25    continue detention, Respondents must establish by clear and convincing evidence that Petitioner

26    presents a current risk of flight or danger to the community such that his re-detention is legally

27    justified.

28

19

Because Respondents make no argument in opposition to Petitioner's request to waive bond and have not provided any evidence of costs that it will incur due to Petitioner's release (*see* Doc. 15), the Court finds that no security bond is required. *See Guillermo M.R.*, 791 F. Supp. 3d at 1038; *see also Ramazan*, 2025 WL 3145562, at *10 (noting that courts "regularly waive security in cases like this one") (citing cases).

**V.    Conclusion and Order**

Accordingly, it is HEREBY ORDERED that:

1.  Petitioner's motion for a preliminary injunction (Doc. 9) is GRANTED IN PART;

2.  Respondents are ORDERED to release Petitioner within ten (10) days unless Respondents schedule a bond hearing to take place before a neutral immigration judge where, to continue detention, Respondents must establish by clear and convincing evidence that Petitioner presents a current risk of flight or danger to the community such that his physical custody is legally justified.

IT IS SO ORDERED.

Dated:    **November 26, 2025**

UNITED STATES MAGISTRATE JUDGE