UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>                Petitioner,<br><br>    v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>                Respondents. | Case No. 1:25-cv-01372-CDB (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 2412<br><br>(Doc. 28) |

Petitioner John Doe ("Petitioner"), formerly a federal detainee proceeding by counsel, initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]

Pending before the Court is the motion of Petitioner's counsel for the award of attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. 28). Respondents Christopher Chestnut (Warden of the California City Detention Center), Sergio Albarran (Field Officer Director of the Immigration and Customs Enforcement ("ICE")), Todd M. Lyons (formerly Acting Director of ICE), Kristi Noem (formerly Secretary of the Department of Homeland Security), and Pamela Bondi (formerly Attorney General of the United States) (collectively, "Respondents"), filed an opposition (Doc. 29) and Petitioner replied (Doc. 30).

---

[1] Both parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 11).

## I.    Relevant Background

Following the parties' briefing, on November 26, 2025, the Court granted in part Petitioner's motion for preliminary injunction after finding that Petitioner was likely to prevail on his claim that his immigration detention by Respondents violated his procedural due process rights under the Fifth Amendment to the U.S. Constitution. *See* (Doc. 20 at 2-5).  In compliance with the preliminary injunction, on December 10, 2025, Petitioner was provided a bond hearing before an immigration judge and was released on bond.  (Doc. 22 at 2).

On the merits of the petition, the parties largely rested on their arguments considered in connection with Petitioner's motion for preliminary injunction.  The Court granted Petitioner's second amended petition for writ of habeas corpus on January 26, 2026.  (Doc. 26).

## II.    Governing Authority

The EAJA provides for an award of attorney fees and costs to private litigants who prevail "in any civil action (other than cases sounding in tort)" against the United States and timely file a petition for fees.  28 U.S.C. § 2412(d)(1)(A).  Under the EAJA, a court shall award attorney fees to the prevailing party unless it finds the government's position was "substantially justified or that special circumstances make such an award unjust."  28 U.S.C. § 2412(d)(1)(A).

## III.    Discussion

Respondents oppose Petitioner's motion for award of attorney's fees and costs on three grounds: (1) that the EAJA does not permit the award of attorneys' fees here because the underlying habeas corpus proceeding is not a "civil action"; (2) that the EAJA does not permit the award of attorneys' fees here because Respondents' position was "substantially justified"; (3) that the attorneys' fees Petitioner seeks to recoup are excessive.

### A.  Whether This Proceeding is a "Civil Action" Under the EAJA

Respondents note that the EAJA expressly limits its provision for an award of attorneys' fees and expenses to a party that prevails against the United States in a "civil action."  Respondents argue that the EAJA's use of this language constitutes only a "partial" waiver of sovereign immunity that must be strictly interpreted in favor of the United Stages.  (Doc. 29 at 12-13, citing *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991)).  According to Respondents, because a habeas corpus

2

action challenging one's immigration detention is not "unambiguously" a "civil action," the EAJA does not operate to waive sovereign immunity.

In support of this argument, Respondents note that the Supreme Court has found that a habeas proceeding does not constitute a "civil action" as that term is used in 28 U.S.C. § 1391(e). *Id*. (citing *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971)). This argument is unconvincing for two reasons. First, the Supreme Court in *Schlanger* relied on the legislative history of the passage of § 1391(e), the statute governing nationwide service of process in a "civil action," and concluded it did not support a finding that Congress intended to expand habeas jurisdiction through inclusion of such cases in its "civil action" ambit. Naturally, that legislative history does not bear on whether the usage of "civil action" in the EAJA includes habeas proceedings. Second, the fact that the Supreme Court has found a habeas proceeding does not constitute a "civil action" as that term is used in one statute does not compel a finding that a habeas proceeding cannot constitute a civil action for purposes of a different statute – particular where, as Respondents acknowledge, the Supreme Court has found that habeas corpus proceedings are "technically 'civil'" in general. *Schlanger*, 401 U.S. at 490 n.4.

Respondents acknowledge that the Ninth Circuit has held that EAJA fees are available in the context of some immigration habeas actions. (Doc. 29 at 18) (citing *In re Hill*, 775 F.2d 1037, 1040-41 (9th Cir. 1985)). However, Respondents argue the Ninth Circuit did not address or expressly resolve in *Hill* whether an immigration habeas action is a "civil action;" rather, instead of interpreting the statutory text, the Ninth Circuit reasoned that the award of fees in that case was consistent with EAJA's "structure and purpose."

Respondents argue that more recent decisions by the Fourth and Fifth Circuit[2] finding that habeas proceedings do not unambiguously fit EAJA's "civil action" definition are more faithful to the Supreme Court's command to interpret a statute's ambiguous terms in favor of immunity. (Doc. 29 at 12, 17) (citing *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012)).

---

[2] *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023), *cert denied* 144 S.Ct. 553 (Jan. 8, 2024); *Obando-Seguro v. Garland*, 999 F.3d 190 (4th Cir. 2021).

3

Both the Third Circuit and Tenth Circuit recently have held that the EAJA "unambiguously" encompasses habeas challenges to immigration detention, expressly finding that such proceedings qualify as "civil actions" and that, accordingly, prevailing petitioners are eligible for an award of fees. *See Michelin v. Warden*, 169 F.4th 418, 424-25 (3d Cir. 2026), *pet. for rehrn'g by panel en banc den'd*, 169 F.4th 160 (3d Cir. 2026); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025). In reaching this conclusion, both courts relied, in part, on the EAJA's use of the phrase "*any* civil action (*other than* cases sounding tort)" [emphasis added] as the qualifying language entitling a prevailing party to seek an award of fees.

In light of the Supreme Court's characterization in *Schlanger* that habeas corpus proceedings are "technically 'civil'" actions, coupled with EAJA's applicability to "any" civil action except an expressly identified category of cases (*e.g.*, "other than cases sounding in tort"), which category unquestionably does not apply here, the Court agrees that the better interpretation of the term "any civil action" in the EAJA is that it unambiguously includes habeas proceedings challenging immigration detention.

**B. Whether Respondents' Position was "Substantially Justified" Under the EAJA**

Respondents argue Petitioner should not be awarded fees under the EAJA because the government's positions in this litigation were substantially justified.

To defeat a prevailing party's claim to attorney's fees under the EAJA, the government bears the burden of showing that its position was substantially justified. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (citing *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). To be substantially justified, the government's position must have a "reasonable basis" in law and fact. *Id*. (citations omitted). "When evaluating the government's 'position' under the EAJA, [courts] consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'" *Ibrahim v. U.S. Dep't of Homeland Security*, 912 F.3d 1147, 1168 (9th Cir. 2019) (*quoting* 28 U.S.C. § 2412(d)(1)(B)).

Respondents maintain in opposition to Petitioner's fee motion that their prelitigation and litigation positions were substantially justified given that Petitioner's detention was pursuant to a statute they assert mandates detention (*see* Doc. 29 at 21-22, citing 8 U.S.C. § 1225(b)). Even if

that premise is true, Respondents continue to unreasonably discount the applicability of the Due Process Clause under the Fifth Amendment to the U.S. Constitution when, as here, immigration authorities seek to maintain custody of a noncitizen without any determinate endpoint.  In Respondents' characterization of governing precedent, § 1225(b)'s provision for mandatory detention pending completion of removal proceedings entirely displaces applicability of the Due Process Clause such that indeterminate detention is not only warranted, but required.  Thus, Respondents argued here that Petitioner has no liberty interest that could implicate a due process right to release because he never was lawfully admitted to the United States.  *See* (Doc. 15 at 8) (arguing "aliens who have not legally entered the country are only entitled to the due process that Congress has statutorily created." ); *see also* (Doc 21 at 4-5) (same).

But in making this argument, Respondents have *never* attempted to reconcile that after an immigration judge ordered Petitioner be removed, Respondents released him, implicitly finding that his release presented neither flight nor danger risks.  *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Nor do Respondents refute or grapple with the fact that for the approximately three- and one-half years following his release, Petitioner successfully complied with all conditions of his supervised release, including the wearing of a geolocation monitoring device until immigration authorities removed it (further confirming their continuing position that Petitioner was not a flight risk). *E.g., Tzafir v. Blanche*, No. 25-cv-02126-JHC, 2026 WL 1413606, at *2 (W.D. Wash. May 20, 2026) (finding government's position not substantially justified where petitioner was ordered removed but then released on an order of supervision, complied with all conditions of release for years, and eventually was rearrested; reasoning, "when revoking a noncitizen's OSUP, the government must articulate changed circumstances in the noncitizen's case").

In addressing a related provision of the INA governing mandatory detention of certain noncitizens, the Supreme Court has recognized that such mandatory detention "does not foreclose

as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (interpreting § 1226(c)). The most reasonable interpretation of *Preap* is that immigration detainees retain procedural due process rights notwithstanding the operation of a statute providing for a detainee's mandatory detention. Indeed, this interpretation – that statutory detention regimes are not to the exclusion of and do not displace a detainee's rights under the U.S. Constitution – is consistent with the Supreme Court's earlier holdings acknowledging this principle. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (holding that the government's statutory authority to detain noncitizens pending removal "is subject to important constitutional limitations" because due process applies to anyone in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (reiterating that a noncitizen who successfully enters the United States and afterwards is subject to removal proceedings retains due process rights) (citing cases), *superseded by statute on other grounds as stated in Dep't of Homeland Security v. Thuaissigiam*, 591 U.S. 103, 135 (2020). In light of this authority and the circumstances set forth above, Respondents' contention that the Due Process Clause does not operate when an immigration detention statute applies is not substantially justified because such a position does not have a "reasonable basis" in law and fact. *Thangaraja*, 428 F.3d at 874.

### C. Whether Petitioner's Fee Request is Reasonable

In determining what constitutes "reasonable" attorney's fees under the EAJA, "the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991). "First, the district court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [citation omitted]. Next, in rare instances, the court may increase or reduce the presumptively reasonable lodestar fee on the basis of factors" that are not captured by the lodestar calculation. *Id*.

The Ninth Circuit maintains a list of the statutory maximum hourly rates authorized by the EAJA, adjusted for increases in the cost of living, on its website. *See Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005); "Statutory Maximum Rates Under the Equal Access to Justice,"

available at https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (last visited May 22, 2026). This maximum rate controls unless the district court finds that a "special factor" warrants a higher rate (*Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)), such as "where the quality of representation resulted in a degree of success beyond what would be reasonably expected at that rate." *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 766 (9th Cir. 1985).

Here, while Respondents do not challenge the hourly rates counsel for Petitioner uses in his lodestar calculation (a rate that is set at the statutory maximum, $258.46) and do not refute counsel's declaration that this amount is below market rate (Doc. 28-2 ¶ 8; Doc. 28-3 ¶ 6), Respondents argue the Court should reduce significantly the total fee and cost award Petitioner seeks based on (1) the excessiveness of hours worked, (2) the overstaffing of multiple attorneys, (3) the duplicative nature of certain hours identified, (4) the purported recovery for clerical tasks, and (5) vagueness of billing records.

Respondents' arguments largely are conclusory. Thus, for instance, although Respondents assert that "[e]ven a cursory review reveals that Petitioner's billing is replete with duplicative and excessive entries" (Doc. 29 at 25), they cite no such examples. Similarly, Respondents contend that "Petitioner's time entries that are vague should be eliminated" (Doc. 29 at 27), but they fail to cite any such entries. And they likewise argue that the Court should decline to award fees for clerical tasks, but again, purport to require the Court to accomplish this without any hint by Respondents of any specific clerical task.

According to their declarations, counsel for Petitioner spent approximately 142 hours on tasks associated with litigating the merits of the case and approximately 19 hours on their fee motion papers. Additionally, counsel for Petitioner seeks to recover for approximately 4 hours of time spent by their paralegal on the litigation.

Petitioner's counsel team includes three attorneys. Two attorneys billed approximately 33.4 hours on the drafting, revising, and editing of the original habeas petition. Two attorneys billed approximately 33.4 hours on the drafting and revising of papers filed in support of Petitioner's motion for preliminary injunction. Two attorneys billed approximately 19 hours drafting the

7

preliminary injunction reply papers.  In addition, a third attorney billed approximately 16 hours in connection with editing the petitions and preliminary injunction papers.

The billing records of Petitioner's counsel lack any detail that would permit the Court to evaluate whether and the extent to which the multiple attorneys' work on the same project was duplicative.  For the sake of comparison, in an out-of-district immigration habeas case involving a similar amount of litigation as this action – the preparation and filing of a petition and motion by the petitioner to proceed by pseudonym, the litigation and hearing on the petitioner's application for temporary restraining order, and the petitioner's EAJA fee motion – the petitioner's three attorneys billed 50.55 hours.  *See S.F. v. Bostock*, No. 3:25-cv-01084-MTK2026 WL 1230044, at *4-6 (D. Or. May 5, 2026).  The undersigned's experience presiding over a significant number of immigration related habeas corpus cases, coupled with the hours found reasonable by the *S.F.* court in a similarly postured action, suggest that counsel's expenditure in this action of more than 161 hours is excessive and, based on a review of the vague billing entries noted above, undoubtedly the product in part of duplicative efforts.

In light of this, the Court will reduce by 30% the hours billed by multiple attorneys on any one of the three tasks noted above for which the vague billing entries do not corroborate the reasonableness of the hours expended (*e.g.*, 85.8 hours for (1) drafting, revising, and editing of the original habeas petition; (2) drafting and revising of papers filed in support of Petitioner's motion for preliminary injunction; and (3) drafting the preliminary injunction reply papers), resulting in a reduction of 25.74 hours.  Additionally, the Court will exclude from the lodestar two billing record entries, totaling 4.5 hours, for which the associated work description is fatally vague.  *See* (Doc. 28-3 at 6) (10/6/25 entry for 1 hour described as "motion"; 10/18/25 entry for 3.5 hours described as "same" where the entries immediate above reflect work by a different attorney).

Further, although counsel attests that his firm charges $250 per hour for paralegal rates (Doc. 28-3 ¶ 6), counsel has not sufficiently established that such a rate is prevailing in the local community and in line for similar services by paralegals of "reasonably comparable skill, experience and reputation."  *See Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984).  Thus, the Court will reduce this rate to the upper range of what another judge within this District recently

found to be the prevailing paralegal rate - $150 hour. *See Saesee v. Bisignano*, No. 1:21-cv-01562-SKO, 2026 WL 1398969, at *3 (E.D. Cal. May 19, 2026); *see also Denepita v. Colvin*, No. 1:13-cv-00846-JLT, 2014 WL 5242496, at *4 (E.D. Cal. Oct. 14, 2014) (reducing paralegal rate where Plaintiff failed to support requested rate because he "provided no information regarding the experience, skills, or reputations of the paralegals who worked on this matter").

In sum, largely because Respondents advance no particularized attacks against any specific or grouping of allegedly excessive, duplicative, or vague billing entries, the Court finds as follows:

(1) Total attorney hours claimed: 161.3 (Doc. 28-1 at 11; Doc. 30 at 8) = $42,800.98

(2) Less hours deemed duplicative/inadequately documented:  -30.24

(3) Total adjusted attorney hours deemed reasonable:  131.06 * $258.46/hr. = $33,873.77

(4) Total paralegal hours deemed reasonable:  4.3 * $150.00/hr. = $645.00

## IV.    Conclusion and Order

Accordingly, it is HEREBY ORDERED that:

1.  Petitioner's motion for the award of attorneys' fees (Doc. 28) is GRANTED IN PART;

2.  Respondents shall remit to counsel for Petitioner attorneys' fees and expenses in the amount of $34,518.77; and

3.  This award shall be made payable to Petitioner, but if the Department of the Treasury determines that Petitioner does not owe a federal debt, then Respondents shall cause the payment of attorneys' fees and expenses to be made directly to Petitioner's counsel.

IT IS SO ORDERED.

Dated:   **May 22, 2026**                    _____

UNITED STATES MAGISTRATE JUDGE

9